## Manufacturing Company *v.* Corbin.

Reissued letters-patent are void, if they embrace a broader claim than that for which the original letters were issued.

Appeal from the Circuit Court of the United States for the District of Connecticut.

The facts are stated in the opinion of the court.

*Mr. Edmund Wetmore* for the appellant.
*Mr. Charles E. Mitchell* and *Mr. O. H. Platt, contra.*

Mr. Justice Woods delivered the opinion of the court.

This is a suit in equity, brought for the infringement of cei tain reissued letters-patent, dated Oct. 11, 1875, for an improvement in sash locks. The original letters were issued to George Voll and George McGregor as joint inventors, and the reissue was granted to their assignee, the Hopkins & Dickinson Manufacturing Company, the appellant.

In the years 1868 and 1869 George Voll was the foreman of George McGregor, a locksmith of Cincinnati, who kept a shop where he sold sash locks. Prior to February, 1868, McGregor had been selling a self-locking sash lock made by Robert Lee,

of Cincinnati, under letters granted to him dated May 30, 1865.

Sash locks are a contrivance which, by fastening the top rail of the lower sash to the bottom rail of the upper sash, prevent the opening of windows from the outside, either by lowering the upper or raising the lower sash. Their general construction and operation is as follows: A lever is pivoted upon the top rail of the lower sash. When the lock is open the direction of this lever is the same as the rail of the sash. To fasten the sashes it is necessary to turn this lever on its pivot to a position across and at right angles to the division line between the impinging rails of the two sashes, when it engages with a catch on the bottom rail of the upper sash. This catch, if, as has generally been the case, it consists of a simple hook, under the projection of which one end of the lever remains when in the locking position, is sufficient to prevent the opening of the window by any direct pressure on the sashes exerted in the ordinary way to open a window, but there would be nothing to prevent the pushing aside of the locking lever by inserting from the outside, between the impinging rails of the sashes, a knife-blade, paper-cutter, or other similar instrument, and thus opening the lock. To prevent this, various devices have been used to hold the locking lever fast when in the locking position, so that it could not be moved sideways from the outside, but only from the inside, by disengaging it from the catch in the ordinary process of unlocking.

This object was accomplished in the sash lock of Lee, by giving the lever a certain amount of play on its pivot, so that when it was turned to the locking position its end not only passed under the catch, but also behind a lip in the catch, thereby forming, with the latter, a latch which prevented any lateral movement of the lever. This was, therefore, called a self-locking sash lock. As in most sash locks, the pivoted locking lever was secured to a bed plate fastened upon the top of the upper rail of the lower and inner sash. This plate was designated the base plate. The catch was attached to a similar plate on the bottom rail of the upper sash, which was called the striking plate.

McGregor was unable to furnish the Lee sash lock to fill a

large order which he had received, and mentioned the fact to Voll, who in a short time produced the model of a self-locking sash lock. In this lock the locking lever was pivoted on a cylindrical stump upon the base plate, the base plate being fastened upon the upper rail of the lower sash. There was a round hole in that part of the cylindrical stump nearest the inner edge of the sash rail, fitted to receive a small cylindrical pin or bolt. That part of the locking lever, which, when it was in the locking position, was over the rail of the inner sash, had a longitudinal hole extending through it to the pivotal stump. Through this hole a cylindrical pin extended from the outer end of the lever to the stump, and was pressed by a spiral spring against the stump. When the locking lever was turned around into the locking position, the end of the pin, by the action of the spring, entered the hole by a horizontal motion, and thus the lever was prevented from turning sidewise. When it was desired to unlock the lock, the pin, which projected beyond the end of the locking lever and ended in a knob, was pulled back out of the hole, and the lever was turned sideways into its unlocked position.

This sash lock was made about February, 1868, and on the 24th of that month Voll applied for letters for his invention, describing it as an improvement in sash locks, the object of which was to prevent the lock from being unfastened from the outside by inserting a knife or other thin instrument between the sashes, and pushing aside the locking lever. The claim was thus set forth in his specification : " Having thus fully described and set forth the nature of my invention, what I desire to secure by letters is : The pin F, operating in hole in stump A, preventing the fastener from being turned, as described and set forth."

This application was refused because the invention had been anticipated by letters-patent issued to Brockseller & Sargent, May 11, 1858. Reference was also made by the examiner in his refusal to the letters of Robert Lee, dated May 30, 1865. This application was reheard and again rejected. The rejection was acquiesced in by Voll, who long after his application, and before its· final rejection, made a small lot of silver-plated sash locks according to his plan, which were sent in full working order to McGregor's shop for sale.

After this rejection Voll made another sash lock, omitting the hole and pin features, and using a pivoted piece at the outer end of the lever which worked vertically by a flat spring, locking the lever as before by an engagement on the base plate. With the view of having letters applied for, he sent a working model of this contrivance to Munn & Co., of New York, who informed him that it was not patentable.

Thereupon Voll and McGregor made the improvement in sash locks for which letters were issued to them dated March 30, 1869.

The original specification described by letter references the separate parts of the sash bolt, and their operation, and the claim was stated as follows: "In a sash bolt the arrangement and combination of the base plate C with the segment c thereon, cam D, spring-bolt F, arm G, and catch H, as shown and described for the purpose specified."

On July 1, 1870, Voll and McGregor sold these letters and the invention thereby secured to the appellant, who, Aug. 6, 1875, applied for a reissue of them. It was granted, Oct. 11, 1875, as prayed for.

In the application for a reissue the claim was thus stated: "A vibrating lever provided with a bolt, in combination with a striking plate or hook, and with a catch-segment behind which the bolt can pass, formed upon the plate upon which the lever is pivoted, the whole constituting a sash fastener, and the parts enumerated in the claim being and operating substantially as specified."

The essential distinction between the original invention of Voll, for which letters were refused, and that covered by the reissue to the appellant, is this: In the contrivance first named the locking lever when in locked position was held fast in its place by a bolt which was driven by a spiral spring into a hole in the stump on which the lever was pivoted. In the contrivance covered by the letters to Voll and McGregor the bolt which holds the locking lever in its place, instead of entering a hole in the post, is forced by the spiral spring past the end of a segment raised upon a base plate, which prevents a sidewise movement of the locking lever until the bolt is retracted.

The sash lock manufactured by appellees, which appellant alleged was an infringement of its reissued letters, had placed on the end of the locking lever a pivoted latch provided with a downward projection, which, when the locking lever was placed in a locking position, entered a hole or socket in the base plate.

The court below dismissed the bill. Its decree is brought here for review.

The defence insisted on is that if the claim of the appellant's reissued letters be construed to cover the appellees' sash locks, it is void, because it embraces the previous invention made by Voll alone, which had been abandoned to the public after it had been rejected by the Patent Office, and which was not the invention of Voll and McGregor jointly, and that if the reissue is so construed as to cover the sash locks made by the appellees, it is for a different invention from that which the original letters to Voll and McGregor covered.

We think this defence is sustained by the evidence.

It is perfectly clear that the sash lock manufactured by the appellees was as much an infringement of the device invented by Voll for which a patent was refused as it was of the reissued letters of the appellant. In both Voll's contrivance and the patented device of Voll and McGregor which the appellant claims, the catch to prevent the sidewise motion of the locking lever was on the base plate and not on the striking plate, and in Voll's invention the catch consisted of a bolt driven by a spiral spring into a hole, and in Voll and McGregor's invention the bolt was driven by a similar spring past the end of a segment raised on the base plate.

A pivoted latch on the end of the locking lever with a downward projection entering a socket in the base plate to prevent a lateral movement of the locking lever does not appear to us to be the equivalent of either the contrivance of Voll or of Voll and McGregor. The difference between them is as clear and distinct as the difference between a door latch and a door bolt.

But if the sash lock of the appellees is held to infringe the Voll and McGregor patent, it beyond question or controversy includes the separate device of Voll for which he made appli-

cation for letters-patent. The only ground upon which the appellees' sash lock can be held to embody any part of the device of either, is that the catch to prevent the sidewise motion of the locking lever is on the base plate and not on the striking plate. But this was the important part of Voll's separate invention, and he was refused letters for it, and abandoned his application therefor. He made locks according to his device, and put them on sale.

Construed in the light of the fact that the application of Voll for letters-patent for his device was refused, the invention of Voll and McGregor is reduced to very narrow limits. Their improvement would consist solely in the fact that the bolt in the locking lever, instead of being driven by the spiral spring into a hole in the post upon which the lever is pivoted, is driven past the end of a segment raised on the base plate. So construed, it is perfectly plain that there is no infringement.

Conclusive evidence to establish the defence is found in the amendments made by the appellant in its application for reissue. If the reissue had been granted as applied for, it might with some plausibility have been claimed that the reissued letters were infringed by the sash locks made by the appellees. But the application in its original form was not granted. The specification for the reissue was amended by striking out, wherever they occurred, the words "socket or depression in the base plate," and substituting the words "catch segment or segment."

This shows beyond controversy that in asking for a reissue the appellant sought to make its letters cover sash locks like those made by the appellees, but was not able to do so, and the reissue was restricted to a sash lock in which the locking lever was made fast by a bolt driven past the end of a segment raised on the base plate.

These conclusions warrant the inference that if the reissued letters are to be construed as the appellant insists they should be, and as they must be, to include the sash locks of the appellees, they are broader than the original letters, and therefore void. *The Wood Paper Patent*, 23 Wall. 566 ; *Russell* v. *Dodge*, 93 U. S. 460 ; *Powder Company* v. *Powder Works*, 98 id. 126 ;

*Ball* v. *Langles*, 102 id. 128; *Manufacturing Company* v. *Ladd*, id. 408; *Wicks* v. *Stevens*, 2 Woods, 312.

We are of opinion that the decree of the Circuit Court dismissing the appellants' bill was right. It is, therefore,

*Affirmed.*